IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.   20-cr-00055-REB

UNITED STATES OF AMERICA,

        Plaintiff,

v.

LAWRENCE MARTIN BIRK ,

        Defendant.
_____

## DEFENDANT'S MOTION FOR A BELOW GUIDELINES SENTENCE
_____

Defendant, Lawrence Martin Birk ("Mr. Birk"), by and through counsel, Edward R. Harris, Assistant Federal Public Defender, hereby moves for a below guidelines sentence. In support, Mr. Birk states that:

### Introduction:

### What Mr. Birk Seeks and Why

Lawrence Birk evaded taxes. This Court has already severely punished him for that. In sentencing Mr. Birk to five years of prison, the Court has accounted for Mr. Birk's conduct and any political motivation underlying it. No further punishment for *those* actions can or should be imposed.

The gravamen of this case is not tax evasion or anti-government sentiment. It is a man's love for his wife of twenty-eight years, his knowledge to a certainty that he will never see her again once he goes to prison, and the fact that he was willing to put that love above court orders. Legally, Mr. Birk was wrong to defy a surrender order and to possess guns when he had been advised that he had lost that right. Yet, at a human

level it is understandable that he made the desperate choice to spend time with his wife before she lost all touch with reality and before he lost the next five years of his life to the BOP.

Of course, Mr. Birk recognizes that he did not merely delay his surrender in violation of the Court's direct order.  He knows that he also defied the Court by possessing guns.  Legally, this too was wrong.  Viewed in the broader context of Mr. Birk's apocalyptic world view, the weapons possession too is understandable.  Critically too, Mr. Birk never used a single weapon; he surrendered peacefully when approached by law enforcement.  There was no confrontation, just a quiet surrender.

The question then is: What is just punishment for this willful disrespect for the Court and the law?  Is it, as Probation and the government recommend, another five years on top of the first five?  An effective life sentence (or at least one that keeps Mr. Birk behind prison walls for a decade or more)?  Or, as Mr. Birk suggests, is it a considerably shorter sentence which adds incrementally to his base of five years?

Because the advisory guidelines ignore the unique facts of this case and fail to address the core of this offense, Mr. Birk submits that they produce a sentence far greater than necessary to achieve sentencing goals.  A far shorter sentence is appropriate.  A variance to a sentence imposing a combined total of an additional eighteen months is sufficient.

**Argument**:

**The Condign Sentence: Making the Punishment Fit the Crime**

It is axiomatic that in every case the punishment should fit the crime. That bedrock principle can be stated many ways. It is enshrined in federal sentencing's parsimony clause. Simply put, given the crimes here, five more years is too much time. Given the facts of this case, five more years is far more time than necessary to achieve sentencing goals.

**Personal History and Characteristics:**

Mr. Birk will not here rehash at length his life and admirable personal history. Those facts are thoroughly laid out in the original sentencing pleadings in his tax case. Suffice it to say, however, that there is far more good than bad in his life. A proud veteran, he has served his country well. He had a rough first marriage but a long, devoted, and stable second marriage. That second marriage to his wife Jean was a driving force behind his decisions to gather his weapons and to not timely surrender to prison.

Mr. Birk has candidly admitted to Probation that he does not regret the time he spent on the lam with Jean. She has Alzheimer's. He knew that this was his last chance to spend time with her. Though he sarcastically refers to that time as a "vacation" sometimes, it could not have been easy for either of them. Mr. Birk knew that his time with her was limited. It was a bittersweet period. How much would any of us pay in time or liberty to have a few final weeks with a loved one? What price love?

Counsel understands that the government intends to fall back upon Mr. Birk's ideology and things he said to others about counsel, the Court, and the U.S., while

3

awaiting the disposition of this case.  Mr. Birk does not deny for a second that he has strong opinions about the government and religion.  He views himself as a Christian man.  He has firm views on the role of government.  Likewise, he admits disappointment and bitterness about the outcome of his tax case.  He is not happy that he received a five-year sentence.  None of that is relevant to this sentencing, however.  He is not being sentenced for his politics, religion, or world-view.  He is being sentenced for violating this Court's directive to surrender and for bearing arms illegally.

**Offense Conduct:**

This is not Orwell's 1984.  We can think poorly of our government, express those beliefs, and not be subject to thought-policing.  The conduct here was not a belief that the government is too intrusive, a political disagreement over policy, or a bad attitude towards the U.S.  The conduct to be punished is his flight and the guns.

The flight was an act of love.  However, misguided, Mr. Birk hoped to spend time with Jean.  That's it.  Nothing more.  Nothing less.

As for the guns, Mr. Birk acknowledges the hypothetical posed by Probation – that having these weapons posed a risk.  No doubt the government is concerned that the guns were tied to his politics and that he might have intended to go out in a blaze of glory.  Well, that is all theory.  Speculation is not fact.  Facts are facts.  And, the fact here is that Mr. Birk did not use the guns.  He did not hole up and force a gunfight with the law.  He neither sought confrontation nor did he engage in any violence.

In fact, what did happen when Mr. Birk was arrested?  The Marshals found him, asked him to leave his motel room, and arrested him.  He exited the room as ordered.  He complied with every request made of him.  He made no attempt to flee.  He made no

4

attempt to fight. He volunteered that there were weapons in the car. Hardly the actions of a man bent on a violent end.

**Deterrence**:

Counsel and the Court are old enough (sadly) to remember well the Cold War. In particular, counsel recalls the expression: "Nuke 'em till the rubble bounces." Mr. Birk is almost sixty-seven years old. If sentenced to another decade of prison, he will be in his late seventies when released (assuming good time credits). That is, if he even makes it out alive.

Surely a doubling of the tax sentence is not needed to insure that Mr. Birk is deterred. As a practical matter, it is impossible to deter the non-surrender in the future; the situation was *sui generis.* Jean will not be alive or sentient upon Mr. Birk completing any sentence. And, a more modest incremental sentence would likely impress upon him the reality that he cannot possess guns anymore.

**Just Punishment:**

Five years is a long time. Ten years is longer. How much is enough here? It is hard ever to say. What is certain though is that sentences post-COVID reflect a new reality. Everyone sentenced now in this pandemic environment faces an even more stressful time away from society. Every defendant now faces increased anxiety and fear of contracting the disease alone and behind bars. This Court no doubt is well aware of the risks to persons like Mr. Birk: older, male, and in a locked petri dish where germs spread like wildfire. One has only to look at the news to see outbreaks at BOP facilities despite their professed best efforts to manage the virus. Any term of years today is exponentially more punitive than ever before.

Ultimately, Mr. Birk knows that this Court must impose some punishment beyond the tax sentence. He submits that an additional eighteen months is the appropriate amount of incremental punishment to address the distinct violations of the Court's trust and the specific circumstances of these offenses.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Edward R. Harris
EDWARD R. HARRIS
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant

6

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Christopher Michael Magnani
Department of Justice, Tax Division
Email: christopher.magnani@usdoj.gov


Elizabeth Caryl Hadden
U.S. Department of Justice-DC-601 D Street
Email: elizabeth.c.hadden@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Lawrence Martin Birk          *via U.S. mail*

s/ Edward R. Harris
Edward R. Harris
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant